## LEVY v. HOFFMAN.

### (Circuit Court of Appeals, Sixth Circuit.   June 30, 1916.)

### No. 2800

1. MINES AND MINERALS ⊛⊐53—CONTRACTS—OPTION CONTRACTS.

   Defendant entered into an agreement to sell to plaintiff at any time within 10 days certain described mining property at a fixed price.   The agreement recited that defendant did not own all the capital stock of the corporation owning the property, and that, in the event he was unable to acquire it, plaintiff should accept such stock as defendant might have, making a proportional reduction in the price, and recited that, if plaintiff should procure a satisfactory purchaser for the property, then and in that event defendant authorized his representative to extend the agreement for 60 days, so as to enable plaintiff to consummate the sale, defendant's representative to exercise his best judgment in determining whether a bona fide purchaser had been procured.   *Held*, that the contract, which was of a unitary character, was an option contract, and plaintiff cannot recover on the theory that it not only gave him an option to purchase the property, but also constituted him a sales broker, whose commission would be everything above the price fixed, and whose duty was done when he brought together defendant, his principal, and the purchaser.

   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 147, 148; Dec. Dig. ⊛⊐53.]

2. CUSTOMS AND USAGES ⊛⊐17—APPLICATION—VALIDITY OF CUSTOM.

   As the contract itself provided, in case the option was exercised, for an extension of 60 days to enable plaintiff to effect the sale, a general custom in the sale of mining properties to allow that period of time for examination of title and the property cannot be relied on to extend the time beyond the extension authorized by the contract, for, time being the essence of the contract and the contract providing for one extension, the custom has no application.

   [Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 34; Dec. Dig. ⊛⊐17; Evidence, Cent. Dig. §§ 1945–1947.]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John E. Sater, Judge.

Action by Charles E. Levy against Herman H. Hoffman.   Judgment for defendant, and plaintiff brings error.   Affirmed.

Hoffman owned the stock control of the Democrata Cananea-Sonora Copper Company, and desired to sell out.   Levy thought that the personal relations of himself and some associates with Mr. Greene of the Greene Consolidated Company were such that he could get Greene to buy the Democrata.   Thereupon, and on October 10th, Levy and Hoffman made the written agreement copied in the margin.[1]   On October 20th, and pursuant to paragraph third,

[1] This agreement made this 10th day of October, 1905, by and between H. H. Hoffman and Charles E. Levy, witnesseth:

First. Said Hoffman agrees at any time within ten days from the date hereof, subject to the conditions hereinafter mentioned, to sell to said Levy all the property at the present time owned by the La Democrata mine in the district of Arispa, Cananea, Sonora, Mexico, free from debt of any kind, for and in consideration of $900,000.00 to be paid Hoffman by said Charles E. Levy, either in cash or in Greene Consolidated Copper Company stock at the market price on the day of acceptance of this option, at said Levy's option; said price of the Greene Consolidated Copper Company stock, however, not to exceed $26.00 per share.   Said Hoffman represents that he does not at the present time own all the capital stock of the Democrata Cananea-Sonora Cop-

Stallo gave Levy a 60-day extension. On November 17th, and referring to the statements of the mining company prospectus which Hoffman had furnished to Levy, Greene wrote Levy, saying: "If these statements are verified upon examination, I will take the property, subject to 60 days for examination from date, at the price of $1,100,000 U. S. gold coin, said amount to be paid in cash upon delivery to me at my office, 24 Broad street, New York, of the title deeds to the property, upon my verification and examination above stated, which examination is to take place within 60 days from date. It is understood that this property is to be free from any and all incumbrances of any sort, description or nature."

Greene's financial responsibility to make good this offer is not questioned, but Hoffman refused to hold this option open for the 60 days, as requested by Greene, and the sale was never closed. Levy brought this action in the court below against Hoffman, claiming that he had procured Greene as a purchaser, and that, by Hoffman's refusal to go on with the same, Levy had been damaged $200,000. In his complaint, he alleged that there was in the sale of mining property a universal trade custom by which, after a purchaser had been procured, he was allowed a reasonable time to examine the property to see if it justified the representations made, and to examine the title to see if it was good, and that, for such a property as this, 60 days was a reasonable time. Defendant answered, setting up various defenses, which it is not important to consider in detail. Upon the trial, a verdict for defendant was instructed, and Levy brings this writ of error.

S. M. Johnson, of Cincinnati, Ohio, for plaintiff in error.
Judson Harmon, of Cincinnati, Ohio, for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and COCHRAN, District Judge.

---

per Company which owns the La Democrata mine, and does not hereby intend to obligate himself to transfer all said property unless he can first acquire all said stock. Said Hoffman further represents that the authorized capital stock of said mining company is $3,000,000 divided into 300,000 shares of $10.00 each, and that he owns and controls, of said amount, more than a majority of the shares, and that there will be at least 67,000 shares in the treasury of said company in case the sale herein contemplated is consummated.

Second. In case said Hoffman should not be able to procure all the stock outstanding in said mining company, then and in that event, he agrees to deliver to said Levy, within the time specified, more than a majority of the shares of the capital stock of said company at a price to be fixed by such proportion of said $900,000 as the shares of stock delivered by said Hoffman bear to the entire then outstanding capital stock (that is to say, to all stock outstanding excepting the stock in the treasury of said mining company, which for the purposes of this paper is considered canceled). Said Hoffman shall have the privilege, however, of delivering as much stock as he may be able to acquire in addition to the stock by him agreed to be delivered at a price to be determined by the same method as with reference to the stock by him agreed to be delivered.

Third. In case said Levy shall procure a satisfactory purchaser for the property mentioned in either paragraph first or second hereof, then and in that event said Hoffman hereby authorizes Edmund K. Stallo, as his representative, to extend this agreement for sixty days, so as to enable said Levy to consummate the sale. Said Stallo is to exercise his best judgment in determining whether or not a bona fide purchaser has been so procured.

Fourth. All expenses of said sale are to be borne by said Levy, who agrees to hold said Hoffman free from all liability on account of such expenses.

Fifth. Said Levy has paid to said Hoffman the sum of $1.00 as consideration for the above agreement, the receipt whereof is hereby acknowledged.

In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.     H. H. Hoffman, [L. S.]
                                      Charles E. Levy [L. S.]

PER CURIAM. [1] We may assume, without deciding, that clause third of the contract, by its reference to procuring a purchaser, meant procuring some one who was likely to buy; that Greene was interested to this extent within the 10 days; that Stallo acted in good faith in deciding that a purchaser had been procured under this paragraph; and that, therefore, the 60-day extension granted by Stallo, and running to December 19th, was valid. We cannot, however, treat the contract, as plaintiff would have us do, as divisible into two—one an option contract for the sale to Levy at a stated price whereby Levy would make no profit unless and until he sold, and the other an agency contract, whereby Levy became a mere broker who earned, as a commission, everything above the stated price received from the purchaser he found, and whose duty was done when he brought together his principal and his purchaser. We think it very clear, whether or not we resort to the aid of surrounding circumstances and the later conduct of the parties, that the agreement, taken all together, was of a unitary character and was an option contract contemplating that Levy or his assignee should buy the property, and that he should have, as his profit, what he could make upon a sale of the option or a resale of the property.

[2] The existence of the custom pleaded may be granted, but it does not help the plaintiff. The authorities relied upon to show the force of such a custom all say—what is obvious—that the custom operates to give additional time under an option contract or a sales contract only in cases where the contract does not itself make specific provision on the same subject; but in this contract, there is such specific provision. It says, in effect, that if within 10 days Levy procures a satisfactory purchaser—himself or another—then he may have 60 days more in which "to consummate the sale." No reason is suggested why this phrase "to consummate the sale" does not cover and include everything which may be necessary to convert the prospective purchaser, who is contingently willing to buy, into the satisfied purchaser who does buy. Examination of title, examination of property, financial arrangements, corporate meetings—all these things necessarily precede the consummation of the sale. Any other construction of this contract implies that, after the prospective purchaser has been interested, during the 10 days, and then after, during the 60 days, everything has been completed and the sale has been "consummated," the purchaser shall still have a reasonable time to decide whether property and title are as represented. Its words do not permit such an interpretation. When the 60-day provision of the contract has been thus construed, it is the end of the case. Time was of the essence of the contract, as of every option contract, and Levy does not claim that he procured a purchaser who, within the 60-day contract period, consummated the sale or was ready to consummate the sale. Greene's offer was conditional on a further extension of time, to January 17th, in which to make up his mind. He never offered to take up the subject of purchase, except upon that condition; and to that extension of time, Hoffman never assented and Stallo had no power to consent.

We observe further that Hoffman's option offer was in an alternative form, reserving the right to elect whether he would sell property or capital stock, and Greene's contingent acceptance covered only one alternative. Even if it may be said that Hoffman waived this objection to the Greene proposition, he did not waive the time limit. There are other obstacles in the way of recovery, but it is not necessary to consider how serious they may be. We have carefully reviewed the elaborate discussion of the case by counsel for plaintiff in error, but we find nothing to make us doubt the correctness of the conclusion we have stated.

The judgment is affirmed.